AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

UNITED STATES OF AMERICA

v.

RONNIE DALE NOBLE

(Name and Address of Defendant)

CRIMINAL COMPLAINT

CASE NUMBER: 2:07mj 97-WC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In or about _____January of 2007_____ in _____Autauga_____ county, in the _____Middle_____ District of _____Alabama_____ defendant(s) did, (Track Statutory Language of Offense) did knowingly and intentionally possess with the intent to distribute and distribute methamphetamine, a controlled substance

in violation of Title __21__ United States Code, Section(s) __841(a)(1)__.

I further state that I am a(n) __Special Agent__ and that this complaint is based on the following facts:
                                    Official Title

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

S/A [signature]
Signature of Complainant

Sworn to before me and subscribed in my presence,

November 7, 2007                                       at          Montgomery, Alabama
Date                                                                      City and State

WALLACE CAPEL, JR.
United States Magistrate Judge                               [signature]
Name & Title of Judicial Officer                             Signature of Judicial Officer

# **AFFIDAVIT**

I, Devin L. Whittle, Special Agent of the United States Department of Justice, Drug Enforcement Administration (DEA) being duly sworn, depose and state as follows:

1. Your affiant is a Special Agent with the Drug Enforcement Administration (DEA). I am currently employed with the United States Drug Enforcement Administration (DEA), and have been so employed for the past eleven (11) years. I am currently assigned to the New Orleans Division, the Montgomery District Office, the High Intensity Drug Trafficking Area (HIDTA) Task Force. Prior to becoming a Special Agent, I was a Montgomery, Alabama, Police Officer for eight (8) years. I have worked exclusively on narcotics investigations for eighteen (18) years. I have investigated criminal violations of the Federal controlled substance laws, including, but not limited to, investigations involving smuggling of controlled substances, distribution of controlled substances in violation of Title 21, United States Code, Section 841; and laundering of the proceeds derived from the sale of controlled substances. This affidavit is submitted for the purpose of establishing probable cause for a complaint against Ronnie Dale NOBLE. Information contained in this affidavit was received by me from oral

1

and written reports about this investigation that I have received, directly or indirectly from Investigators/Detectives who were involved in this investigation.

3. On January 30, 2007, DEA Special Agent JB Hamilton and DEA Task Force Agent Joe Herman met with a reliable confidential source, hereinafter referred to as CS#1, at a prearranged meeting location in Autauga County, Alabama. Your affiant is aware of the fact that CS#1 has a criminal history. In January of 2004, CS#1 was arrested by the Jefferson, Georgia Police Department and charged with manufacture/sell/dispense/distribute methamphetamine, possession of tools for committing of a crime, transaction in drug related objects and acquiring license plate to conceal vehicle identification. Further, on February 18, 2005, charges of violation of the Georgia controlled substance act were dismissed. On January 3, 2007, CS#1 was arrested after being found in possession of a small amount of methamphetamine and a shot gun. As a result of these charges, CS#1 agreed to cooperate with law enforcement. (NOTE: CS#1 ceased his cooperation in April of 2007.) Your affiant is aware of the fact CS#1 has worked with agents to make controlled purchases methamphetamine from Ronnie Dale

NOBLE. Your affiant is aware of the fact that CS#1 has provided reliable intelligence regarding Ronnie Dale NOBLE and other members of his methamphetamine trafficking organization. The purpose of the meeting was to arrange an undercover meeting with Ronnie Dale NOBLE. At approximately 4:40 pm TFA Herman instructed CS#1 to call NOBLE'S cell phone, (334)202-0668 and ask NOBLE if he would be able to supply CS#1 with a quantity of methamphetamine. NOBLE answered the phone almost immediately. During the conversation, CS#1 stated to NOBLE that CS#1 had just gotten off work and was on the way over to NOBLE'S house. CS#1 asked NOBLE if he "had any", meaning methamphetamine. NOBLE told CS#1 that he could take care of the CS#1. This consensual phone conversation was monitored and recorded by TFA Herman who later downloaded it onto a compact disk which was processed as evidence.

4. At approximately 4:45 pm SA Hamilton, Task Force Agent Joe Herman, Autauga County Sheriff Deputies Jim Steele and Ty Jones searched CS#1 and CS#1'S vehicle for drugs and other contraband with negative results. CS#1 was then equipped with an audio recording device. CS#1 was not given any official authorized funds (OAF) to purchase methamphetamine because, according to the CS#1, Ronnie Dale

NOBLE would front (give on consignment) CS#1 the methamphetamine.

5. CS#1 departed the meet location followed by SA Hamilton and TFA Herman. At approximately 5:19 pm, TFA Tom Reid observed CS#1 park in front of Ronnie Dale NOBLE'S residence located at 448 County Road 68 East, Deatsville, Alabama.  At approximately 6:40 pm, CS#1 called TFA Herman and stated that he was leaving Ronnie Dale NOBLE'S residence and that NOBLE had given CS#1 approximately and eighth of an ounce of methamphetamine. CS#1 was followed back to the meet location where, at approximately 6:43 pm, CS#1 relinquished custody of a small clear zip-lock bag containing a crystalline substance believed to be methamphetamine to SA Hamilton and TFA Herman.  This bag of methamphetamine was later processed into evidence.  The methamphetamine CS#1 purchased from Ronnie Dale NOBLE was subsequently submitted to the DEA laboratory in Dallas, Texas for analysis.  The laboratory results indicated that the substance was 3.6 grams of methamphetamine.

6. CS#1 explained that CS#1 had visited with Ronnie Dale NOBLE and several of his friends for nearly an hour.  CS#1 asked NOBLE if he could supply CS#1 with methamphetamine.

4

NOBLE instructed CS#1 to follow him to NOBLE'S bedroom where NOBLE retrieved a bag. According to CS#1, the bag was full of "8 ball" size bags of methamphetamine. CS#1 further stated that NOBLE gave CS#1 one of the "8 ball" size bags and told CS#1 that he wanted $225.00 for it. CS#1 told NOBLE that CS#1 would give him the money later. CS#1 then departed the residence.

7. Task Force Agent Herman removed the audio recording equipment from CS#1 and CS#1's vehicle. Both CS#1 and his vehicle were searched for contraband with negative results. TFA Herman downloaded the recording of the meeting from the audio recording equipment and processed in into evidence.

8. On Wednesday, January 31, 2007, at approximately 2:30pm DEA Task Force Agent Joe Herman and Autauga County, Alabama Sheriff's Sergeant Ty Jones met with CS#1, at the meet location, for the purpose of making a controlled buy of methamphetamine from Ronnie Dale NOBLE. During this meeting, CS#1 was directed to pay NOBLE for the methamphetamine that NOBLE "fronted" the CS the previous evening, January 30, 2007.

9.   Agents established surveillance in the vicinity of Ronnie Dale NOBLE'S residence, TFA Herman provided CS#1 with $1,225.00 of official funds to be used as payment to NOBLE for the methamphetamine acquired from NOBLE on January 30, 2007 and as payment to NOBLE for more methamphetamine.  CS#1 and CS#1's vehicle were searched for contraband by Ty Jones with negative results.  Prior to departing for NOBLE'S residence, CS#1 made a consensually monitored telephone call to NOBLE, setting up the drug deal.  The telephone call was made to NOBLE'S residence. CS#1 was provided a recorder to capture relevant conversation between CS#1 and NOBLE.

10.  At approximately 2:46pm, CS#1 departed the meet location for NOBLE's residence.  During this time, CS#1 was being followed by TFA Herman and DEA Special Agent Neill Thompson.  CS#1 arrived at NOBLE'S residence at approximately 3:05pm.

11.  At approximately 3:26pm, CS#1 departed NOBLE'S residence and met TFA Herman and Deputy Jones at the meet location.  TFA Herman subsequently took custody of $100.00 official funds returned by CS#1, methamphetamine purchased by CS#1 and the technical equipment. In addition, Deputy

6

Jones searched CS#1 and CS#1's vehicle with negative results.

12. CS#1 was subsequently debriefed by agents and required to provide a written statement. During the debriefing, CS#1 stated that upon CS#1's arrival at Ronnie Dale NOBLE'S residence, CS#1 noted that Johnny DAWKINS, Bart TATUM, Tom TAYLOR, and Tom CAMPBELL were present. CS#1 and NOBLE subsequently entered NOBLE'S trailer and the two went to NOBLE'S bedroom. CS#1 stated that CS#1 paid NOBLE $225.00 for the methamphetamine that NOBLE had "fronted" the CS the previous evening, January 30, 2007, and purchased an additional half ounce of methamphetamine for $900.00. (NOTE: CS#1 returned $100 in OAF to TFA Herman after leaving NOBLE's residence)

13. Further, CS#1 stated that during the conversation with Ronnie Dale NOBLE, CS#1 asked NOBLE for $1,000.00 worth of methamphetamine at which time NOBLE hesitated. According to CS#1, NOBLE called Steven Wayne CATON to ensure that NOBLE could get an ounce of methamphetamine from CATON. After being assured NOBLE could get an ounce of methamphetamine from CATON, NOBLE sold CS#1 that the remaining amount of methamphetamine NOBLE possessed, approximately one half

7

ounce of methamphetamine. NOBLE told CS#1 that NOBLE wanted to be sure that he could get more methamphetamine from CATON because NOBLE did not want to run out like he had previously. The methamphetamine CS#1 purchased from Ronnie Dale NOBLE was subsequently submitted to the DEA laboratory in Dallas, Texas for analysis. The laboratory results indicated that the substance was 14 grams of methamphetamine.

14. On February 09, 2007, DEA Special Agent JB Hamilton and DEA TFA Joe Herman met with CS#1 at a prearranged meeting location in Autauga County, Alabama. The purpose of the meeting was to arrange an undercover meeting with Ronnie Dale NOBLE. At approximately 8:35 am TFA Herman instructed CS#1 to call NOBLE at NOBLE'S residence and ask NOBLE if he would be able to supply CS#1 with a quantity of methamphetamine. NOBLE'S girlfriend answered the telephone and stated that NOBLE was in bed asleep. This telephone conversation was monitored by TFA Herman.

15. Agents decided to send CS#1 to Ronnie Dale NOBLE'S residence in an attempt to make contact with NOBLE. At approximately 8:40 am TFA Joe Herman and Autauga County Sheriff Deputy Ty Jones searched CS#1 and CS#1's vehicle

for contraband with negative results. CS#1 was then equipped with an audio and video recording device. CS#1 was also given $1,800.00 of official authorized funds (OAF) which had been recorded earlier to be used to purchase methamphetamine.

16. CS#1 left the prearranged meet location followed by SA Hamilton and TFA Spivey. At approximately 9:05 am TFA Spivey and SA Hamilton observed CS#1 park in front of Ronnie Dale NOBLE'S residence located at 448 County Road 68 East, Deatsville, Alabama. Via the audio transmitter, agents could hear CS#1 talking with a female for several minutes. Eventually, at approximately 9:25 am, CS#1 could be heard talking with NOBLE. At approximately 9:34 am, CS#1 could be heard counting money. CS#1 later explained that NOBLE had just given CS#1 a small clear plastic zip-lock bag containing suspected methamphetamine and CS#1 was paying NOBLE.

17. At approximately 9:40 am, CS#1 left NOBLE'S residence and returned to the meet location followed by SA Hamilton and TFA's Spivey and Herman. At approximately 10:00 am, CS#1 relinquished custody of a small clear zip-lock bag containing a crystalline substance believed to be

9

methamphetamine to SA Hamilton and TFA Herman. This bag was later processed into evidence. The methamphetamine CS#1 purchased from Ronnie Dale NOBLE was subsequently submitted to the DEA laboratory in Dallas, Texas for analysis. The laboratory results indicate that the substance was 23.9 grams of methamphetamine.

18. CS#1 explained that CS#1 had visited with Ronnie Dale NOBLE'S girlfriend for several minutes until NOBLE finally came out of his bedroom. CS#1 then asked NOBLE if he could supply CS#1 with an ounce of methamphetamine. CS#1 stated that NOBLE then went back into his bedroom and returned a couple of minutes later with methamphetamine. CS#1 stated that NOBLE gave CS#1 the methamphetamine and CS#1 paid NOBLE $1,800.00. CS#1 provided a written statement regarding this transaction.

19. TFA's Herman and Spivey removed the audio recording equipment from CS#1 and CS#1's vehicle were searched with negative results. TFA Spivey was able to download the recording of the meeting from the audio recording equipment onto a compact disk which was processed into evidence.

20. On March 27, 2007, at approximately 08:10 a.m., Autauga County, Alabama Deputy Sheriff Ty Jones observed a

tractor-trailer speeding (70 MPH in a 45 MPH Zone) and driving in the middle of the road on County Road 23 and Gardner Road in Autauga County, Alabama. The tractor-trailer was traveling South. Deputy Jones used his emergency equipment to stop the vehicle. Deputy Jones pulled his patrol vehicle in front of the tractor-trailer as the vehicle was pulling over.

21. As Deputy Jones exited his vehicle, the driver of the tractor-trailer stepped out and began walking toward Deputy Jones. Deputy Jones explained to the driver the reason for the traffic stop and asked the driver for his driver's license, proof of insurance, and medical card. The driver produced Alabama Drivers License, but stated that he could not find the insurance card, and his medical card had expired. At this time, Deputy Jones identified the driver as CS#2. Deputy Jones called dispatch and ran information regarding CS#2 and the vehicle. During this time, CS#2 went back to the truck and was looking around in the area of the sleeper compartment.

22. Deputy Jones advised CS#2 that he needed to step out of the truck for officer safety. CS#2 complied

with Deputy Jones request. Deputy Jones then conducted a search for weapons on CS#2'S person. Deputy Jones located a $7,060 in CS#2'S back pocket. Deputy Jones then asked CS#2 for proof regarding the ownership of the tractor. CS#2 advised Deputy Jones that he had picked up the tractor from a previous driver and did not know the whereabouts of the paperwork for the tractor.

23. Deputy Jones explained to CS#2 that the paperwork should be within the reach of the driver and that CS#2 should not be operating a tractor without a valid medical card, CS#2 agreed. Deputy Jones then asked CS#2 if he would give consent for law enforcement to search the inside of the tractor. CS#2 gave verbal consent to locate the paperwork for the tractor. While searching the cockpit, Deputy Jones found a black binder with driver information in it. CS#2 stated that it wasn't the correct paperwork. Deputy Jones began to look further when he noticed a notebook located behind the driver's seat between the sleeper and the driver's seat. Deputy Jones noticed an open plastic bag on top of the notebook. Inside the plastic zip-lock bag was a white crystal-like substance. Deputy Jones believed the substance to be methamphetamine. Deputy Jones subsequently found a second

bag containing a white crystal substance believed to be methamphetamine. In addition, Deputy Jones found a digital scale and a bag with a red apple on the outside containing several small baggies. Deputy Jones also found a glass pipe with an off-white residue in it. The substance on the pipe tested positive for methamphetamine. The methamphetamine seized from CS#2 was subsequently submitted to the DEA laboratory in Dallas, Texas for analysis. The laboratory results indicate that one exhibit was 42.7 grams of methamphetamine and the other exhibit was 1.2 grams of methamphetamine.

24. On April 13, 2007, DEA TFA Joe Herman and DEA TFA John Hurst interviewed CS#2 regarding his drug trafficking activities. During the interview, CS#2 stated that he was being supplied methamphetamine by Ronnie Dale NOBLE. CS#2 stated that NOBLE went to federal prison for a methamphetamine related charge in the mid 90's. CS#2 further stated that approximately 6 months after NOBLE got out of prison, CS#2 saw NOBLE at Danny EVANS residence where NOBLE had a race car. CS#2 stated that about one month after that meeting, he and NOBLE talked about CS#2 selling methamphetamine for NOBLE. CS#2 stated that NOBLE declined his offer at that time. According to CS#2, about

one or two years after NOBLE got out of prison, CS#2 again started receiving methamphetamine from NOBLE in one ounce quantities. CS#2 further stated that CS#2 would receive methamphetamine from NOBLE every time NOBLE returned from a trip out West. CS#2 stated that NOBLE was driving a truck for Jon Davis Trucking Company at that time and that NOBLE had a source for methamphetamine in California and Phoenix, Arizona. CS#2 stated that NOBLE would get methamphetamine from either source (California or Arizona) depending on which source had methamphetamine available. In addition, CS#2 stated that NOBLE purchased his truck from Jon Davis Trucking Company in Opp, Alabama. CS#2 stated that even though Ronnie Dale NOBLE does not drive the truck any more, NOBLE still receives shipments of methamphetamine because NOBLE has a person named Tom CAMPBELL, a/k/a "Cherokee" driving for him. CS#2 stated that Tom CAMPBELL gets the shipments of methamphetamine for NOBLE out West and brings the drug back to NOBLE.

25. Additionally, CS#2 said stated he was receiving one ounce of methamphetamine from Ronnie Dale NOBLE every time the truck returned from Phoenix, Arizona or California for approximately the past year. CS#2 stated that initially CS#2 paid NOBLE $1,800.00 per ounce, but NOBLE

eventually dropped the price to $1,500.00 per ounce. CS#2 estimated that CS#2 purchased one ounce of methamphetamine three times per month from NOBLE for the past year.

26. According to CS#2, in approximately November of 2006, Ronnie Dale NOBLE arrived at CS#2'S residence with one half pound of methamphetamine and weighed out an ounce for CS#2. CS#2 further stated that typically, NOBLE would drop an ounce of methamphetamine for CS#2 along CS#2'S driveway near a gas tank. CS#2 stated that he would leave the money for the methamphetamine at the gas tank for NOBLE or at times get the methamphetamine on the "front." (receive the drugs, but pay for the drugs at a later time)

DEA SPECIAL AGENT DEVIN WHITTLE

Sworn to and subscribed before me
this 7--th day of November, 2007
at Montgomery, AL

Judge Wallace Capel, U. S. Magistrate Judge

15